## DAWSON *v.* PARHAM.

Decided January 9, 1892.

1. *Swamp land patent—Presumption.*

The recitals in a patent. of swamp land are presumed to be true until the contrary is proved.

2. *Swamp land—Presumption in favor of patent certificate.*

Where, under the provisions of the act of 20th of January, 1855, a patent certificate was issued to the holder of a certificate of purchase of swamp land, it is incumbent upon the holder of a conflicting certificate of purchase, who seeks to show a prior right and consequent superior equity, to establish that his certificate of purchase was issued prior to that on which the patent certificate was based.

3. *Evidence—Certified copy.*

A certified copy of the original records of the swamp land office, from the office of the commissioner of state lands, is of equal dignity as evidence as the originals.

4. *Ejectment—Res judicata—Equitable title.*

One who sues in ejectment to establish a legal title to land is not concluded by an adverse judgment therein from subsequently maintaining a suit to establish an equitable title to the same land where it does not appear fro m the record or otherwise that the equitable title was in fact in issue in the former suit.

APPEAL from *St. Francis* Circuit Court in chancery. MATTHEW T. SANDERS, Judge.

H. B. & T. C. Dawson brought suit against John and Anna Parham to establish equitable titles to three several tracts of land, situated in township 5 north and range 3 east, viz.: (1) The northwest quarter of the northwest quarter of section 20; (2) the north half of the southeast quarter of section 19; and (3) the south half of the southwest quarter of section 20.

The court decreed in favor of the plaintiffs as to the first tract, and dismissed the complaint as to the other two. Both sides have appealed. The facts are sufficiently stated in the opinion.

*John J. & E. C. Hornor* for appellant.

1. As to north half southeast quarter section 20. This

was swamp land, was bought by Johnson and paid for, and a certificate of purchase issued by the land agent in 1853. This gave Johnson, *prima facie*, an equitable title, the legal title being in the State. The officer is presumed to have acted in conformity to law. 24 Ark., 402. Brinkley's title is inferior, and bears date long after Johnson's. The first purchaser acquires an equity which will be upheld by cancelling the inferior legal title. 22 Ark., 344; 14 *id.*, 431; 24 *id.*, 33; 36 *id.*, 334; 44 *id.*, 452. No entry having been shown prior to December 13, 1853, by competent evidence, the court erred in holding appellee's title superior to appellant's. Act January 20, 1855, secs. 1, 4, etc.; 20 Ark., 337; Act January 12, 1853, sec. 31; 36 Ark., 351; 47 Ark., 297.

2. As to the south half southeast quarter section 20, the plea of *res adjudicata* is not good, because the cause of action in the two suits was not identical.

To constitute *res adjudicata* there must concur four identities, viz.:

(1.)  In the thing sued for, or subject matter.

(2.)  In the cause of action.

(3.)  In the persons and parties.

(4.)  In the quality in the persons for or against whom the claim is made. Black. on Judg., sec. 610; 3 Kansas, 397. Would the same evidence establish the present and former suit. If so, the former recovery is a bar; if otherwise, it is not. 12 Ark., 167; Black. on Judg., sec. 726; Freeman on Judg., sec. 259; 60 N. Y., 272; 14 Fed. Rep., 812; 79 N. Y., 390; 28 N. W. Rep., 51; 42 Cal., 367; 39 N. Y., 845; 5 Wall., 592. The only question in the former suit was whether plaintiffs were possessed of the *legal title* to the land. The question in this is, whether they are the holders of the *equitable* title. The causes of action are not identical. 7 Mon., 568; 12 Pac. Rep., 449; Wells on Res Adjudicata, sec. 328.

*W. G. Weatherford* for appellees.

1. The certificate of the commissioner of State lands. should have been admitted. Mansf. Dig., secs. 2833, 4184,. 4180. This shows that Brinkley's was the prior entry. Under act January 30, 1855, land agents were empowered to decide conflicting claims, and pass upon the validity of titles, etc. 20 Ark., 337. The presumption is that they did their duty. 24 Ark., 402. The presumption is stronger that the governor did his duty, and issued the patent to the party entitled.

2. As to south half southwest quarter section 20, the matter is *res judicata.* 2 Wallace, 35; 49 Ark., 75; 41 *id.,* 75; 6 *id.,* 317; 1 Herman, Estop. & Res. Jud. p. 552 ; *ib.,.* 221. A judgment settles all questions which *could have been* litigated. Cases *supra.*

3. The court overlooked, it seems, the execution sale of J. H. Dawson's interest in the two tracts. This certainly carried a one-seventh interest.

COCKRILL, C. J. The object of this suit in equity by the appellants was to establish title to three tracts of land and to divest the appellees of the legal title which it was alleged was improperly vested in them.

The court dismissed the complaint as to two tracts and decreed in favor of the appellants as to the other. They appealed, and subsequently the defendants prosecuted a cross-appeal by leave of this court.

As to the northwest quarter northwest quarter section 20,. township 5 north, range 3 east, the court found the facts in effect to be that G. V. C. Johnson became the purchaser in 1853 by certificate of entry from a swamp land agent ; that Johnson executed his title bond to Pool and John Dawson,. binding himself to convey the tract to them upon the payment of the price agreed upon ; that the price had been paid ; that Pool and Dawson made partition of the lands ;. that this tract fell to Dawson ; that plaintiffs who are appellants had succeeded to the interest of Dawson, who is.

dead, by conveyance from his heirs; that the title so held was equitable; and that they were entitled to a conveyance from the defendants who had succeeded to the rights of Johnson by conveyance from his heirs. Without recounting the evidence, it is sufficient to say that we have carefully reviewed it, and find that it preponderates in favor of the court's conclusions. The same state of facts was before the court in *Dawson* v. *Parham*, 47 Ark., 215.

There is one fact, however, which the chancellor overlooked. J. H. Dawson was one of the seven heirs of John Dawson. The appellee, Anna Parham, became the purchaser of his interest in all the lands in suit, at execution sale in 1879. That interest was an undivided seventh of the whole. The title thus acquired has not been controverted by the appellants. The conveyance by J. H. Dawson to the appellants was subsequent to the sale under execution of his interest. His conveyance for that reason carried nothing. The court erred therefore in decreeing that interest to the plaintiffs in the tract above described, and the decree to that extent should be reversed on the cross-appeal of Anna Parham.

As to the north half of the southeast quarter of section 19, township 5 north, range 3 east.

This also was swamp land. It was patented to Robert C. Brinkley by the State in 1859, and through him the appellees deraign their title. The appellants insist that their grantors had the prior right to the patent by virtue of an entry made in the proper land office and certificate of purchase issued by an authorized swamp land agent in December, 1853, and that this gives them an equity to be invested with the legal title conveyed by the State's patent to Brinkley. But upon the record before us the appellants' contention cannot prevail. The patent to Brinkley was issued in pursuance of the authority granted by the swamp land acts. It recites that the land agent had previously issued his patent certificate to Brinkley, by virtue of the act of January 20, 1855, as the original purchaser of said land. These recitals show the authority upon which the governor assumed

1. Presumption as to swamp land patents.

to act in issuing the patent. There is a presumption therefore that they are true. *Heeler* v. *Gist,* 27 Ark., 200; *Chrisman* v. *Jones,* 31 *id.,* 609; *Hendry* v. *Willis,* 33 *id.,* 836; *Holland* v. *Moon,* 39 *id.,* 120.

2. Presumption as to swamp land patent certificates.

We must take it then that Brinkley was the original purchaser until the contrary is proved. The reason for that presumption is made more apparent by a consideration of the act of January 20, 1855, under which the certificate was issued. One of the objects of the act was to afford the swamp land agents the opportunity to adjust conflicting entries. *Hempstead* v. *Underhill,* 20 Ark., 337. To that end provision was made to the effect that certificates previously issued by the swamp land commissioners should be presented for examination to the officers then known as the swamp land agents of the proper district. If the holder was ascertained to be the original purchaser, he received from the agent what the act terms a patent certificate. The deed affords evidence, as we have seen, of the fact that Brinkley was the holder of such a certificate, issued in pursuance of this act; and as the officer who issued that certificate is presumed to have acted in conformity to law in issuing it (*Rice* v. *Harrell,* 24 Ark., 402), we must presume that Brinkley surrendered a valid certificate of purchase upon the issue of the patent certificate. In order for the appellants to show a prior right, and a consequent superior equity, it was incumbent upon them to establish that their certificate of purchase was issued prior to that which Brinkley surrendered. *Holland* v. *Moon,* 39 Ark., 120.

3. Certified copy of swamp land records as evidence.

But we are not forced to rely upon these presumptions to establish the priority of the conflicting entries. The original records of the swamp land office, now in the custody of the land commissioner, show that Brinkley's entry was in fact prior in date to the appellants'. A certified copy of the record was introduced upon the trial to prove the fact of Brinkley's priority. The original was competent to prove that fact, because the entry was made in pursuance of an official duty which required the record to be kept, and the

officer is presumed to have recorded the truth until the contrary is made to appear. The statute makes a certified copy of such records of equal dignity as evidence as the originals. Mansf. Dig., sec. 2833.

As to the tract of land last described, the decree dismissing the appellants' complaint is right.

The appellants' deraign title to the south half of the southwest quarter of section 20, township 5 north, range 3 east through the swamp land certificate of December, 1853, above mentioned, and the appellees show no title except to an undivided one-seventh interest, being the interest of J. H. Dawson purchased at execution sale. The appellants had, however, been previously defeated in an action of ejectment against the appellees for the possession of that tract, and the court below ruled that the judgment in that case was a bar to the relief sought in this.

4. When judgment in ejectment no estoppel to set up equitable title.

In the action of ejectment the plaintiffs' complaint contained allegations of title similar to those made in their present complaint, except that it was alleged that, after the death of G. V. C. Johnson, his administrator executed a deed conveying the land to the obligees in his title bond, and that the deed was executed by the administrator in pursuance of an order of a court having jurisdiction in the premises. That is, they alleged a legal title in themselves upon which alone an action of ejectment can be maintained.

In the present complaint the plaintiffs allege only an equitable title—that is, the swamp land entry by Johnson, the bond for title executed by him to Pool and Dawson, and their succession to the rights of Pool and Dawson, the allegation as to a conveyance of the legal title by the administrator being omitted.

The argument is that, inasmuch as equitable rights under our system of procedure may be enforced at law if the parties acquiesce (*Harris* v. *Townsend*, 52 Ark., 411), the presumption is that the judgment in the cause in ejectment is an adjudication that the plaintiffs had no title either legal or equitable. But the fallacy of this contention is that no pre-

sumption is available to make the judgment a bar to the right of the plaintiffs in the ejectment suit to assert their equitable title. The material fact at issue was that the plaintiffs had the legal title to the land. They were in the right forum to litigate that question, and were not in an attitude to go into equity for other relief so long as they relied upon the administrator's conveyance. If the equitable title was in fact at issue, it was incumbent upon the party relying upon the estoppel to prove by the record or otherwise that that title was actually adjudicated. If the fact is left in doubt, the question should be resolved against the party asserting the estoppel. That is the rule established by the authorities in this class of cases. Consistent with this rule is the statement by the Supreme Court of the United States in *Russell* v. *Place*, 94 U. S., 608, as follows: "It is undoubtedly settled law that a judgment of a court of competent jurisdiction, upon a question directly involved in one suit, is conclusive as to that question in another suit between the same parties. But to this operation of the judgment it must appear either upon the face of the record or be shown by extrinsic evidence, that the precise question was raised and determined in the former suit. If there be any uncertainty on this head in the record—as, for example, if it appear that several distinct matters may have been litigated, upon one or more of which the judgment may have passed, without indicating which of them was thus litigated, and upon which the judgment was rendered —the whole subject matter of the action will be at large, and open to a new contention, unless this uncertainty be removed by extrinsic evidence showing the precise point involved and determined. To apply the judgment, and give effect to the adjudication actually made, when the record leaves the matter in doubt, such evidence is admissible."

It is further said in the same case that "to render the judgment conclusive, it must appear by the record of the prior suit that the particular matter sought to be concluded was necessarily tried or determined—that is, that the verdict

in the suit could not have been rendered without deciding that matter; or it must be shown by extrinsic evidence, consistent with the record, that the verdict and judgment necessarily involved the consideration and determination of the matter."

The judgment in ejectment relied on here shows no more than that the plaintiff failed to establish a possessory right at law to the land. It is conclusive of that issue. *Sturdy* v. *Jackaway*, 4 Wall., 174. But until an action of ejectment, based upon a legal title, is made the equivalent of a suit in equity to establish title, the judgment in ejectment cannot be said to bar the latter action. 2 Black on Judgments, secs. 651, 655; *McGee* v. *Overby*, 12 Ark., 164; *Smith* v. *Talbot*, 11 *id.*, 666. It follows, therefore, that the court erred in holding that the judgment in ejectment was a bar to the equitable rights asserted in this case.

Consistent with this ruling is the case of *Robinson* v. *Kruse*, 29 Ark., 575, where it is held that a recovery by the plaintiff in replevin is not necessarily a bar to a subsequent action of trover for the same property by the defendant in the replevin suit. The decision of that case is not based upon the difference in the forms of action, for that is immaterial where the same right is in fact litigated. *Baxter* v. *Brooks*, 29 Ark., 173; *McGee* v. *Overby*, 12 *id.*, 167; *Bigelow on Estoppel*, p. 86.

That an equitable title is not necessarily concluded by a judgment in ejectment is sustained by the following cases: *Hawley* v. *Simons*, 102 Ill., 115; *Hill* v. *Oliphant*, 41 Pa. St., 377; *Speed* v. *Braxdell*, 7 Mon. (Ky.), 568; *Reynolds* v. *Lincoln*, 71 Cal., 183.

It follows from the conclusion reached that the decree of the circuit court should be affirmed as to the second tract above described; that it should be reversed as to the first tract, and the cause remanded with instructions to enter a decree, quieting Parham's title as to one-seventh of the first tract and decreeing as before as to the other six-sevenths thereof; and as to the third tract that Parham's title be

quieted as to one-seventh thereof, and that the plaintiffs.
have the relief sought as to the other six-sevenths.

It is so ordered.